IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED _____ ENTERED
LODGED _____ RECEIVED

MAR 0 7 2003

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

WESTPORT INSURANCE COMPANY,          *

    Plaintiff          *

v.          *          Civil Action No. AMD-01-141

BLUM, YUMKAS, MAILMAN,          *
GUTMAN & DENICK, P.A., *et al.,*
          *
    Defendants.          *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## ORDER

Upon the motion of Defendant Blum, Yumkas, Mailman, Gutman & Denick, P.A. (hereafter "Blum, Yumkas"), and having considered the grounds stated in support of said motion, as well as any arguments made in opposition thereto, and the Court having conducted an evidentiary hearing on said motion, it is, this ___7th___ day of March, 2003, hereby ORDERED that:

1.    The parties hereto reached and agreed to a settlement presided over and approved by the Honorable Paul W. Grimm ("the Settlement Agreement"), which Settlement Agreement has been presented to this Court, and which this Court finds to be fair and reasonable.

2.    Defendant Frederick Shapiro acquiesced in and agreed to the Settlement Agreement, and the said Frederick Shapiro is hereby bound by all terms and conditions of

said Settlement Agreement, and it is further and specifically ORDERED that Frederick Shapiro be, and hereby is, bound by the terms of the Release attached hereto as Exhibit A, as if he had signed said release and had his signature notarized, and that release shall be effective against him for all purposes stated therein.

3.     There are no legal or factual grounds supporting the purported claims of Gerard J. Faloni, and accordingly his claims to any portion of the funds contained in the Burke, Gerber account (as defined below) or to any of the settlement funds are hereby denied and barred, and his objection to the Settlement Agreement and the distribution of the funds from the Burke, Gerber account are hereby overruled

4.     Andrew Radding is hereby authorized to and shall immediately transfer all funds in the  Burke, Gerber Escrow Account, Account No. 002006512800 ("Burke, Gerber Account"), to the Adelberg, Rudow, Dorf & Hendler, LLC Non- IOLTA Interest Bearing Attorney Trust Account established for purposes of the settlement of this case ("Adelberg Non-IOLTA Interest Bearing Account"), to be distributed as part of, and in accordance with, the Settlement Agreement.

5.     All funds contained in the "Shapiro-Flex Trust Nos. 1" bank account, First Union/Wachovia Account No. 2200201260418, said funds belonging to various Shapiro-Flex beneficiaries, shall be used to fund and make the payments called for in the Settlement Agreeement, and Peter F. Axelrad shall, and is hereby authorized to, execute all necessary documents to transfer said funds to the Adelberg Non-IOLTA Interest Bearing Account to be paid to the parties under the terms of the Settlement Agreement.

00133/0/00070044.WPDv3

6.      Andrew Radding, or any other duly authorized representative of the law firm of Adelberg, Rudow, Dorf & Hendler, LLC, is hereby authorized to and shall disburse and transfer to the parties in accordance with the terms of the Settlement Agreement the funds from the Adelberg Non-IOLTA Interest Bearing Account.

7.      Following distribution to the parties of the funds required to be paid under the terms of the Settlement Agreement, any and all funds remaining in the Adelberg Non-IOLTA Interest Bearing Account, if any, shall be paid out as follows: The first Nine Thousand Six Hundred Sixty Nine Dollars and Eighty Two Cents ($9,669.82) shall be paid to Defendant Blum, Yumkas as reimbursement for the costs of publishing notices in local newspapers in accordance with this Court's July 23, 2002 Order. All additional funds shall be paid *pro rata* to the parties according to the percentages in the Settlement Agreement.

8.      All terms and conditions of the settlement agreed to by and binding upon all of the parties hereto, including the amounts received by each claimant, shall be confidential, private and secret. The parties shall neither notify nor comment to the news media or any representative or agent of the news media or to any other person or entity. No party may discuss or publicise any aspect, term or condition of the settlement or the negotiations and discussions leading thereto; provided, however, that disclosure is permitted (a) as necessary in the communication with taxing authorities, insurers or reinsurers, professional advisors, such as lawyers, financial advisors and accountants; (b) as required by a court or agency of competent jurisdiction; and (c) among parties

represented by the same attorney. The parties shall not disclose any of the terms and conditions of the Settlement Agreement or that there has even been an agreement, absent the prior written consent of each and every other party. In the event that any disclosure as set forth in the proceeding sentence is necessary, the person making the disclosure shall do so in a manner reasonably calculated to limit the disclosure to the particular third party having a right or interest in the information and, in the event that any disclosure as set forth in the preceeding sentence is necessary, the person making the disclosure shall advise all parties to the Settlement Agreement, reasonably in advance and in writing, of the necessity and intention to make the disclosure. Notwithstanding the foregoing, the parties may disclose that the matter has been settled to their satisfaction.

9.    The parties' rights and obligations under the Settlement Agreement and their respective Releases shall survive this Order.

10.    Except as provided above, all claims which have been or could have been asserted in this case are dismissed with prejudice, each party to bear his, her or its own costs.

Andre M. Davis
United States District Judge

**EXHIBIT A TO MARCH __, 2003 ORDER OF
UNITED STATES DISTRICT JUDGE ANDRE M. DAVIS**

## GENERAL RELEASE

RECITALS:

This RELEASE made this _____ day of July 2002, by and between, FREDERICK SHAPIRO together with his agents, heirs, executors, personal representatives, affiliates, trustees, guardians, servants, predecessors, successors, officers, directors, shareholders, attorneys and assigns (hereinafter collectively referred to as "RELEASORS"), and IRVING F. COHN, ESQUIRE, the law firm of BLUM, YUMKAS, MAILMAN, GUTMAN & DENICK, P.A., ST. PAUL MERCURY INSURANCE COMPANY, THE ST. PAUL INSURANCE COMPANIES, the law firm of BURKE, GERBER, WILEN & FRANCOMANO, and THE WESTPORT INSURANCE CORPORATION, together with their respective predecessors, successors, officers, directors, shareholders, members, principals, partners, agents, employees, servants, affiliates, subsidiaries, trustees, executors, administrators, privies, assigns, associates, attorneys, heirs and insurers (hereinafter collectively referred to as "RELEASEES");

WHEREAS the RELEASORS have been engaged in a dispute with RELEASEES;

WHEREAS certain trust beneficiaries (hereinafter referred to as "Claimants") have asserted that IRVING F. COHN, ESQUIRE, and the law firm of BLUM, YUMKAS, MAILMAN, GUTMAN & DENICK, P.A. breached their respective fiduciary obligations as Trustee (either as actual Trustee or as de facto Trustee) by failing to administer certain trusts with at least as much care and skill as a person of ordinary prudence would exercise in dealing with his own property, and more specifically, that IRVING F. COHN, ESQUIRE, and the law firm of BLUM, YUMKAS, MAILMAN, GUTMAN & DENICK, P.A., failed to take reasonable steps to take control of the trust property and to keep control of the trust property and to avoid commingling the trust property with other property, and failed to use reasonable care and skill in the management and investment of the trust property. As a result of these allegations, the Claimants assert that the trust corpus to which each was entitled under the Trust Agreement would have been larger than

the amount of the corpus that each Claimant has actually received as a result of the trust administration. The settlement of the claims in which the Claimant will receive lump sum payments, is intended to replace the portion of the corpus that was lost as the Claimant alleges; and

WHEREAS, the RELEASORS and the RELEASEES desire to amicably resolve any and all disputes which do or might exist among them, whether known or unknown.

WITNESSETH, in consideration of the aforegoing recitals, as well as other good and valuable consideration, the receipt of which is hereby acknowledged, it is

AGREED:

1.    **Incorporation of Recitals**. The recitals to this Agreement are incorporated by reference herein.

2.    **Settlement of All Claims**. RELEASEES shall pay unto RELEASORS the sum of One Thousand Nine Hundred Ninety Nine Dollars and Sixty Cents ($1,999.60), constituting settlement in full for any and all claims RELEASORS have or may have, whether known or unknown, against RELEASEES for any matter, cause or thing whatsoever.

3.    **No Admission**. By reason of agreeing to this compromise and agreement, RELEASEES deny liability of every sort and state they have made no agreement to do or omit to do any act or thing not set forth herein. They further state that this Agreement is entered as a compromise in order to avoid expense and to terminate all controversy and/or claims for injuries or damages of whatsoever nature, known or unknown, including further developments thereof in any way growing out of or connected with the RELEASEES.

4.    **No Publicity/Silence Provision**. The parties to this Agreement, as well as their agents, privies and assigns, including attorneys, shall maintain the terms and conditions of this Agreement as private and secret. In addition, the parties shall neither notify nor comment to the news media or any representative or agent of the news media, or to any other person or entity. The parties shall not issue a press release relating to any such matters.

This provision shall allow disclosure: 1) as necessary in the communications with taxing authorities, insurers or reinsurers, professional advisers, such as lawyers and accountants or 2) as required by a court or agency of competent jurisdiction, the parties shall not disclose any of the terms and conditions of this Agreement or that there has even been an agreement absent the prior written consent of each other. In the event that any disclosure as set forth in the preceding

sentence is necessary, the person making such disclosure shall do so in a manner reasonably calculated to limit the disclosure to the particular third party having a right or interest in the information; moreover, in the event that any disclosure as set forth in clause #2 of the preceding sentence is necessary, the person making the disclosure shall advise the other, in advance and in writing, of the necessity and intention to make the disclosure.

The parties recognize that this no publicity/silence provision is a material part of this Agreement, but for which this agreement would not have been entered. Any disclosure except as set forth in the preceding paragraph shall be deemed a material breach of this Agreement and the RELEASEES shall have available to them all the remedies of law or in equity to satisfy their loss.

5.    **General Release**.

(a)    RELEASORS hereby release, acquit and forever discharge RELEASEES of and from any and all claims or demands of whatsoever nature, action and causes of action, damages, debts, sums of money, costs, loss of service, attorney's fees, cost of litigation, humiliation, embarrassment, mental anguish, injury to reputation, and money benefits or compensation of any kind, whether known or unknown, matter, cause or thing, including, but not limited to any purported bad faith cause of action against anyone, whatsoever from the beginning of the world to the date of this Agreement.

(b)    RELEASORS agree that this Release represents a full and complete settlement between the parties regardless of the adequacy of the compensation, and that RELEASEES have no obligation to make any payment or to do any act other than as set forth herein.

(c)    RELEASORS agree that all damages recoverable by them against anyone other than RELEASEES in any way related to the RELEASEES are hereby reduced under the provisions of the Uniform Contribution Among Joint Tortfeasors Act by the amount of the consideration paid for this release or to the extent of the statutory *pro rata* share of RELEASEES, whichever is greater, and agrees that for this purpose only, RELEASEES are to be considered joint tortfeasors with any other tortfeasors liable to the undersigned for damages arising out of the rendering of professional or fiduciary services to the same extent as if RELEASEES were adjudicated to be joint tortfeasors by a final judgment of a court of record after trial on the merits.

(d)    RELEASORS agree that if they file or any other person files (or has filed) a lawsuit against someone other than RELEASEES seeking recovery for damages as a result of the rendering of professional or fiduciary services, and if in that lawsuit a cross-claim or third-party claim is brought against RELEASEES, then this Release is to be filed with the court as irrevocable

evidence of the consent of RELEASORS to have any verdict or judgment in their favor reduced by the statutory *pro rata* share of each of RELEASEES.

(e)    RELEASORS covenant and agree not to sue or otherwise bring any claims or causes of action against RELEASEES in any way related to the rendering of professional or fiduciary services, and to indemnify and to hold RELEASEES harmless from all claims and demands, costs, loss of service, expenses, hourly fees and litigation expenses for which RELEASEES are found liable to pay anyone as a result of any suit demanding damages arising out of the rendering of professional or fiduciary services, and to pay on behalf of RELEASEES all attorney's fees, court costs, or other costs of litigation which RELEASEES may incur in any case filed against RELEASEES demanding damages arising out of the rendering of professional or fiduciary services.

(f)    RELEASORS covenant and agree to reduce in any lawsuit arising out of the rendering of professional or fiduciary services any verdict or judgment rendered in favor of RELEASORS and against someone other than RELEASEES by the amount of any verdict or judgment said person or entity obtains against RELEASEES.

(g)    RELEASORS warrant and represent that they do not intend to file any suit against any person or entity to recover any damages related to the rendering of professional or fiduciary services, and that they have not previously filed any such suit, other than the action previously referred to herein.

(h)    RELEASORS warrant and represent that, prior to the execution of this Release Agreement, they have not made nor suffered to be made any assignment or transfer of any right, claim, demand or cause of action related to RELEASEES or the rendering of professional or fiduciary services.

(i)    RELEASORS represent that prior to signing this Release they have read it, understood its terms and conditions, were given an opportunity to consult with counsel and voluntarily signed it after conferring with their attorney.

6.    **Cooperation/Further Assurances**. RELEASORS agree to cooperate fully and to assist in a reasonable manner in taking any and all additional action which may be necessary or appropriate to give full force and effect to the basic terms and intent of this agreement, which are not inconsistent with the terms of the agreement, without further cost or expense on the part of RELEASEES.

7.      **Acknowledgement of Authority**. FREDERICK SHAPIRO represents that he has all necessary and appropriate authority to bind, and execute this agreement on behalf of all RELEASORS.

**8.     Miscellaneous**.

(a)     This writing constitutes the complete, final and entire understanding of the parties hereto, and they shall not be bound by any terms, covenants, conditions or representations not expressly herein contained, in writing.

(b)     **Modification**. This Agreement may not be modified or changed orally, but only by an agreement in writing signed by the party against whom enforcement of any such change is sought.

(c)     **Choice of Law**. This Agreement shall be governed by and interpreted according to the laws of the State of Maryland.

**Construction**.   This Agreement shall be construed without regard to any presumption or other rule requiring construction against the party who caused it to have been drafted.

(e)     **Counterparts**. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same agreement.

(f)     **Exclusive Jurisdiction.** The United States District Court for the Northern Division of Maryland shall have exclusive jurisdiction over all issues and proceedings related to this document.

WITNESS the hands and seals of the parties to this Agreement the day, month and year first above written.

WITNESS:

_____     _____(SEAL)
                                    **FREDERICK SHAPIRO**

STATE OF MARYLAND

CITY/COUNTY OF _____ TO WIT:

    **I HEREBY CERTIFY** that on this _____ day of _____, 2002, before me, the undersigned, a Notary Public of the State and City/County aforesaid, personally appeared **FREDERICK SHAPIRO**, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purpose therein contained.

    **IN WITNESS WHEREOF**, I hereunto set my hand and official seal

                                   _____
                                   Notary Public
                                   My Commission Expires: _____